Today is number 171284, United States v. John A. Barbosa. Thank you. Thanks. May it please the court, Anthony Ford and Alexander Bailey on behalf of John Barbosa. I'd like to start by noting that my brief makes several arguments. I intend to address only the first, which is the Franks issue, given this court's recent ruling in Lopez with regard to the on-court criminal act. So I will proceed. The district court committed a reversible error by denying Barbosa's motion for a Franks hearing, contrary to the court's ruling, Barbosa did make a substantial showing that the affidavit in support of the arrest warrant contained materially false and misleading and omitted material false information that it was done in a reckless or intentional manner. I would start with the statement of facts that were submitted in support of the application. It's a brief recitation, and it's at the joint appendix 53 and 55. First of all, the error, the most glaring error on the face of it was the failure to mention the correct weight of the defendant. It was 40 pounds understated. It failed to mention the affidavit in support, failed to mention the age disparity, 20-year age disparity between Mr. Barbosa and Julian, excuse me, Anna Pereira, the woman who he allegedly was pinned to the wall by. It also failed to mention the fact that at least one of the witnesses in her sworn statement in support of her restraining order mentioned that the two were sort of struggling together, which would imply that there was a physical struggle and not simply Barbosa acquiescing to her pushing him against the wall and out the door. Are all of your arguments dependent on us understanding there to be an inconsistency with respect to whether the account is that she overpowered him versus whether they just struggled? No, that's one piece of the argument. And I would suppose that all the papers that went to the magistrate and the information that the officer had suggests only that there was a struggle. Well, are you including the six-hour delay in the reporting of it? Because you can't look at each of these in isolation. Each of them add up to a substantial showing. There's one possibility, which is the problem is that what the magistrate heard was that she overpowered the defendant. And if one reads it that way, then I start to see how you can say, well, omitting the fact about the weight and then the fact about age matters. But if I thought that what the magistrate was told was just that there was a struggle, do you then still have an argument that there was? And what is that argument? Does the weight matter then? Does the age matter then? Those issues don't matter as much. What does matter is it is apparent that at least one of the reporting witnesses, the primary one, Julian Perera, had a prior charge of three crimes of dishonesty. The archivistion is only clear that there was a resolution that involved a payment of restitution, which certainly suggests that there was merit to those charges. So it's not a dismissed charge or a simple arrest. And that was known to, it appears in the record anyway, and I looked at this again carefully, the officer writes in his report that, and I'll read you this, it's in Joint Penance 54. He says, I checked both parties for warrants and restraining orders, and neither party had any. Mr. John Barboza does have a lengthy BOP in Massachusetts, including firearms charges and other violent crimes. That suggests to me that when he checked, at least for the defendant, his BOP came up and he noted the violent crimes, which obviously helped in the probable cause analysis, but he didn't note the charges against Julian Perera. Now, the district court said that he knew of those charges. Because I believe, and so this is why we need the Franks hearing, frankly, is to ask him, because the district court, in his opinion, didn't analyze this aspect of her argument. She didn't address it at all. She mentioned the Navy argument, but when you get to the actual decision of the order, she doesn't analyze the fact that it appears from the report that he would have had access to the witness' BOP. And in Tangway, that was considered a significant fact and a material omission by the state trooper in New Hampshire who didn't mention the fact that the informant in that case had been convicted of a crime of dishonesty, uttering false prescriptions. Yeah, but the witness in that case knew of that conviction. Well, I believe the witness in this case knew as well. But there's nothing in the record that shows that the witness was in Tangway. It's ambiguous. In Tangway, they had that Franks hearing, which is how they found out about it. No, no, they had, well, they had a Franks hearing, yes. Correct, and so a lot of the facts that were developed in Tangway were because of the Franks hearing. Was the argument made to the district court that what you just pointed to, the review of BOP or Barbosa, suffice to reveal enough of a showing that there should have been a Franks hearing as to whether he knew of the convictions? That precise argument was not made because, frankly, again, what I just read to you, I checked both parties for warrants and restraining orders, and neither party had any. Then he goes on. It's unclear to me. I don't have knowledge as to whether there's one system that they checked, whether for warrants or not. So the argument was made that the individual had a warrant, that the officer either knew or should have known it, and he should have known it because of the further duty of inquiry in Tangway. Yeah, but that's a different point because that suggests that you need then some triggering back to trigger the duties you should have known. It's not just the fact that there is a conviction we've never said is enough to trigger a duty of inquiry. That's where all the other factors come into play. The six-hour delay, the impossibility of the very story. The implausibility of it, doesn't that depend on the story being that she overpowered him as opposed to simply that there was a struggle? Because there's nothing inherently implausible about there having been a struggle. She pushed and he pushed back. Or are you saying that there is? I'm saying that there is. You think that a struggle would be inherently implausible? Well, common sense tells me it's hard to imagine a 60-year-old woman rushing a man, waving a gun. Something happened in that apartment, obviously, but it's hard to imagine that. And then you wait six hours before you report a life-threatening incident. So all those facts add up to duty of further inquiry. Either the officer knew and checked, because he did check something, to find that there wasn't any loop and warrants. So either he knew about the prior charges and didn't report it, or he just checked the defendant's spot. But he should have checked hers, because he didn't check for a loop and warrants. Why not take the next step? Something drove him to check for her. And he would have been checked for the grandmother and her career. And so when you add that up, I mean, again, the district court didn't analyze that. And had we had the Franks hearing, which, again, I believe did occur in Tango, which is why a lot of those facts were developed, I think in this case probable cause, when you have a fundamental crime charge like that, and I think the court held that's something that should have been brought to the magistrate's attention, and it wasn't. So when you put it all together, particularly the six-hour delay, and so the answer to that was that the grandmother had a doctor's appointment. And then if you look at the grand jury testimony, there's some confusion. Jillian Perez says it might have been her grand-colleague. Who has a doctor's appointment on a Saturday? Why wasn't that question asked? So those are highly unusual statements that were made, and he didn't inquire any further. Clearly, he himself asked the question, because the six-hour delay was obvious to him. But he just took the answer and went with it. So the Franks hearing is necessary so that those who had an opportunity to challenge those things. And if he says, yeah, I didn't believe it, and just put it down, I don't know what he would say, but we have made a substantial showing based on all the misstatements and omissions and the red flag, I would call it, of the nature of the story and the delay, and impose the duty on the officer to get more information. So if there's any other questions, that concludes my argument. Thank you. Thank you. Chief Judge Howard, and may it please the Court, Mark Quindlen on behalf of the United States. The district court in this case considered these issues on two separate occasions. First, to the extent that they were embedded within the defendant's motion to suppress, and then second, when the Franks motion was filed. And the Court did not err in concluding that the substantial preliminary showing required by Franks had not been shown in this case. To answer Judge Barron, one of your questions, I believe, just checking back in the papers, the argument was not made in the terms that it was made now in the motion for a Franks hearing with respect to the convictions, i.e. that, as I understand the argument, it's that the officer checked for warrants or restraining orders. He also learned that the defendant had a lengthy Bureau of Prisons record, and so presumably he must have made the same inquiry with respect to Ms. Poerra. Well, there's nothing in the record that establishes that. This Court has said that conjecture isn't enough to entitle one to a Franks hearing, and I don't believe that argument was made in those terms in the district court. How the argument was presented was that there were the red flags comparable to that which this Court found in Tangway, and if further steps had been taken, the officer would have learned this information. So why, in your view, were there not similar red flags? I mean, obviously there's some distinguishing points, but you don't have to never say you have to be 100 percent. No, in line with Tangway, I would have the duty to absolutely be transparent. But I start with the fact that you have a single complainant in Tangway who the officer knew had issues. He had been, I think the terms were quirky, that he had some degree of mental instability. In this case, as the district court noted, you had two individuals, Ms. Poerra and her mother, who reported the incident. The officer did ask about why there was a delay in reporting the incident. It wasn't simply because there was a doctor's appointment. Ms. Poerra said that she was scared. And it's not entirely clear, the time frame, but I think it's somewhere between five and six hours. That's nowhere near the kind of delays in reporting that courts have said indicates some kind of red flag. And I would say as well that this really is, the defendant and Ms. Poerra had a prior relationship. This is really a kind of domestic violence type situation. Those can be very volatile. And I would suggest that it's not at all unsurprising or that it's a red flag that somebody might be so scared when a former boyfriend pulls a gun in their home and threatens to kill everyone inside, that they don't go immediately to the police. Some people might do that. We know from common experience that some people don't report it at all. So I don't think it's at all comparable to the situation that was present. What about the nature of the story itself? I think it's a similar thing. I don't read, nor did the district court read the account as suggesting that Ms. Poerra's mother overpowered the defendant. Once again, I don't think it's, when somebody comes into a house, the account was that she opened the door, he then barged in. There was a struggle. It's not at all surprising that a mother would try to defend her family when somebody pulls out a gun. It's also not inherently implausible that the defendant, although threatening with a gun, isn't going to physically attack somebody in response. The entire intent may have been just to scare people, not to actually harm in that case. It's, again, not comparable to the kind of red flag issue in Tangway, and that's why the district court did not err in finding that even if all of those facts had been included, it would not have initiated probable cause in this case. What about the misstatement of the weight, or do you not concede it's a misstatement? I think that there isn't anything in the record that explains that, but I think that what the district court found, even if the affidavit had correctly stated that he was 180 pounds, it would have initiated probable cause. And with respect to the age, the affidavit made clear it was Ms. Poerra's mother. It didn't necessarily state that she was 59 years old, but presumably it was somebody who was not the same age as her daughter or the defendant. If the court has no other questions, we respectfully request the court affirm. Thank you. Thank you both.